### ENFORCEMENT OF BUILDING RESTRICTIONS.

Circuit Court of Cuyahoga County.

VIRGIL D. ALLEN v. THE DEMING REALTY COMPANY.

Decided, March 18, 1907.

*Covenants—Building Restrictions Enforceable in Modo et Forma.*

Where one has purchased a lot subject to general restrictions which were part of a general plan in opening up a street, or which were represented to him and the public to be part of such a plan, he is entitled, having relied upon and conformed to those restrictions, to have the same enforced, *in modo et forma*, against his vendor and all purchasrs from the vendor with notice of the general plan.

*Robert Crosser*, for plaintiff.
*Smith, Taft & Arter* and *E. J. Thobaben*, contra.

HENRY, J.; MARVIN, J., concurs; WINCH, J., dissents.

In this appeal the plaintiff seeks to enjoin the defendant from conveying any lots on Pasadena avenue, in its so-called "Grantwood Allotment" in this city, without incorporating into the deeds of conveyance certain building and other restrictions such as are contained in the deed of conveyance from defendant to plaintiff of a certain residence lot now owned by plaintiff on said avenue.

The restriction in controversy is the last of a series to which plaintiff's lot is subjected, and which he claims the defendant represented to him, at the time of his purchase, were part of a

general plan, and applicable to all the lots on Pasadena avenue
save for a slight variation in the stipulated minimum cost of
buildings at different points thereon.    From plaintiff's title
deed, dated June 5, 1906, it appears that his property is

"subject to the following reservations and limitations in con-
sideration of this conveyance and shall be binding on the heirs
and assigns of the *grantee,* and shall run with the land, to-wit:
That said premises shall be used for residence purposes only by
the *grantee,* his heirs and assigns; that no intoxicating liquors of
any kind shall ever be maunfactured or sold on said premises;
that no building shall be erected or placed on said premises
which shall cost and be of value less than thirty hundred dollars
($3,000) and not nearer than thirty feet from the front and
street line to the front line of the porch, nor nearer than eight
feet from the east line of said premises; that no double or two
family house or shop shall be erected or placed on said premises;
that no terrace or apartment house shall be erected or placed on
said premises; that no fence or enclosure of any kind shall be
erected or placed within sixty feet from the front and street line
of said premises; that the general grade shall not be over
eighteen inches higher than the top of the curb."

The foregoing is a part of the defendant's specially printed
form of deed save that the figures or numbers and some other
details were left to be inserted by the scrivener in proper blank
spaces provided for that purpose.

The defendant also had a specially printed form of land con-
tract containing similar provisions, in the last of which, however,
the word "uniform" is substituted for the word "general" in
the deed, so as to read, "The uniform grade of said lot shall not
be over —— inches higher than the top of the curb."

Neither of these blank forms of deed and contract respectively
is peculiarly adapted for use in connection with the sale of lots
in defendant's "Greenwood Allotment," and it is evident that
they were not prepared exclusively for that purpose.    Nor does
it appear that the plaintiff had anything to do with this blank
form of land contract.    Endorsed on the back of the particular
specimen of this blank form which is shown in evidence, are,
however, certain written instructions to one of the defendant's
sales agents, given him as appears from the testimony, by the de-

fendant's superintendent, and defining the prices charged and the restrictions imposed by the defendant with respect to lots on four several avenues in said allotment. To these instructions I shall hereafter refer.

As already stated, the controversy here is over the 18, inch grade restriction. Plaintiff claims that this restriction was held out to him as being applicable throughout Pasadena avenue. Defendant claims that, while said grade was intended to be and has been applied to all of that avenue except some 16 lots at one end, it was never intended nor represented to be applicable to the land thus excepted. This end of the avenue terminates in a ridge or knoll, whereon, the general grade of lots was intentionally left indeterminate, pending the establishment of the curbline and the ascertainment of its height.

Recently, however, the general grade of the lots at that end of the avenue has been fixed at 36 inches above the curb line. Some six of these lots have been sold, four of them before this litigation was commenced. These sales were all made, however, with the understanding that the defendant might fix the grade; which has now, accordingly been done. One Meermans has built a house upon his lot at the 36 inch level. But he was informed of plaintiff's claim before his foundation was completed. None of these lot owners is a party to this suit, and of course no relief is asked as against them. Save for the unsold portion of the high ground at the end of the avenue, nearly all the lots on the avenue have been sold by deeds containing restrictions like those in plaintiff's deed. Defendant claims that, prior to its purchase of this entire property, the plan was conceived of terracing the front lawns of the lots in the high ground of Pasadena avenue, and that prior to plaintiff's purchase, the president of the defendant company brought back from a trip to certain western cities a photograph illustrating the actual carrying out of the park entrance and terracing idea which he proposed to employ. It claims further that a large grove of trees grows on this high land or, at least on that part of it embraced in the lots immediately behind those on Pasadena avenue, so that the grade of the Pasadena lots can not be cut down to the 18 inch level at this point without either sacrificing the trees or making an undesira-

ble variation of grade between the lots on Pasadena avenue and those behind them.

We think these claims of the defendant are probably true, but the question we have to consider is what representations were made by the defendant to the plaintiff and to the public when plaintiff purchased. The plaintiff testifies that he was very much attracted in the spring of 1906 by the long stretch of lawns of uniform depth and grade on another street of defendant's "Grantwood Allotment."

He says he specially inquired of defendant's salesman and of its superintendent if the same effect was to be carried out on Pasadena aveiue, and that he was repeatedly assured that such was the defendant's intention. Plaintiff called the special attention of defendant's agent to said knoll, or ridge, inquired what was to be done with that, and was told that the defendant had cut away a similar ridge at the opposite end of an adjacent avenue and would do the same with this. Several former sales agents testify that they were instructed without qualification that the grade of lots on Pasadena avenue was to be eighteen inches above the curb-line. Mr. Canniff, defendant's superintendent, and a witness for defendant, testifies that he told the plaintiff that the grade would be "uniform" though he now says that he used this expression in a sense different from that understood by the plaintiff. His written instructions already referred to expressly mention the 18 inch grade in the "first block" of Pasadena avenue. As to the "second block" the writing conveys no express instructions, save that the minimum cost of buildings is there $3,000 instead of $3,500 and the price of lots is $30 instead of $35 as in the first block. But it is perfectly clear, reading the entire paper together, that the instructions are meant to be exhaustive, that the 18 inch grade, as well as all other restrictions named, apply to both blocks alike, and that the plan of varying the grade and terracing the lawns at the high end of Pasadena avenue is not contemplated thereby. Whether this was due to oversight or to the supposition that general representations of this character might be varied to suit conditions at the high end of the street, without incurring any liability to previous purchasers is not necessary to determine.

In either event the policy of making unqualified representations of this character was not restricted to this single instance, for, in a full page advertisement published by the defendant in the Cleveland *Plain Dealer*, of Sunday, July 1, 1906, the following language descriptive of the general plan of restrictions, applicable to this and other streets of said allotment is used:

"Double houses, apartment houses, terraces, tenement houses, two family houses, business blocks and saloons are not allowed on beautiful Grantwood Allotment.

"The entire property is protected and reserved for private residence purposes exclusively.

"All the restrictions are incorporated in the deeds and run with the land perpetually.

"Houses must set back a uniform distance from the inside of the sidewalk, must maintain a uniform grade and location on the lots which insures good common sense regulations, wide streets, and plenty of air space between buildings.

"Park entrances of artistic beauty are erected at the entrance of each street, insuring greater privacy to the street and lending individuality and tone to the surroundings."

At this time the sale to the plaintiff had been completed but the plaintiff shows that the representations which he alleges were made to him in regard to the defendant's general plan were not mere misrepresentations, but were in accord with what the defendants held out to the public in general at about the same time.

When it is declared, as in this advertisement, that "houses must set back a uniform distance from the inside of the sidewalk, must maintain a uniform grade and location on the lots" it is perfectly evident that intended purchasers were authorized to infer, as Allen says he did infer, from the similar representations made to him, that the front lawns from one end to the other of any street in the allotment would stretch out in a vista of unvarying depth and grade.

It is said, however, on behalf of the defendant, that the artistic excellence of its plan of terracing near the end of Pasadena avenue is quite equal to that understood by the plaintiff. The plaintiff, therefore, does not and can not show any damage or substantial invasion of his rights in the premises, and that he has no equity wherewith to invoke interference by this court in

the issuance of the onerous writ of injunction, particularly as the rights of innocent purchasers will be interfered with, and plaintiff alone, of all the lot owners upon the street pretends that he has suffered, or will suffer, an irreparable injury or any injury whatsoever.

The answer to this contention is that if plaintiff purchased, subject to restrictions which were part of a general plan in the opening up of this street, or which were represented to him and the public to be part of such a plan, he is entitled, having relied upon and conformed to those restrictions, to have the same enforced *in modo et forma* as against his vendor who made the representations, and all others who purchased from said vendor with notice of the general plan.

Under the evidence in the case we can not escape the conclusion that a general plan of the sort claimed by the plaintiff was communicated to him and to the public generally at the time he made his purchase, and that he is, therefore, entitled to a decree enjoining the defendant from conveying any of the lots not sold upon such street, except such conveyances be made subject to the same restrictions in regard to grading of lots, and otherwise, as are contained in plaintiff's deed.

Our brother Winch disagrees with the foregoing inferences of fact and therefore dissents from the judgment of the court, although agreeing with the views of the law taken by the majority of the court and applied by them to the facts as they understand them to be from the evidence.